**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>      Plaintiff,<br><br>vs.<br><br>Andrew Lee Butler,<br><br>      Defendant. | No. CR-22-01695-001-PHX-SPL<br><br>**ORDER** |

On December 13, 2022, Magistrate Judge Eileen S. Willett ordered that Defendant Andrew Lee Butler ("Defendant") be detained pending trial as a danger to the community and as a flight risk. (Doc. 10). On December 27, 2022, Defendant filed a Motion for Review of Detention Order. (Doc. 21). On January 17, 2023, after briefing by the parties (Docs. 21, 22, & 26), this Court held a hearing on the Motion. Having carefully considered the parties' arguments—both those in their briefing and those made at the hearing—the Court now issues this Order denying Defendant's Motion.

"[F]ederal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (citations omitted). Thus, "[o]nly in rare circumstances should release be denied" and any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* (citations omitted). "If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). When reviewing

a magistrate judge's detention order, "the district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Court may not give any deference to the magistrate's ultimate conclusion. *Id.* (citations omitted). The Bail Reform Act of 1984 (the "Act") requires that a defendant facing trial be released under the least restrictive conditions that will reasonably assure his appearance as required and the safety of the community.[1] *See* 18 U.S.C. § 3142(c)(1)(B). "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

Section 3142(g) provides the factors "that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community." *Id.* (citing 18 U.S.C. § 3142(g)). The factors are: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 1342(g). "Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d at 1121 (citations omitted). Otherwise, "[t]he weight to be accorded to each of these factors rests in the Court's discretion." *United States v. Gentry*, 455 F. Supp. 2d 1018, 1020 (D. Ariz. 2006) (citation omitted).

///

---

[1] The Act sets forth a rebuttable presumption that there are *no* conditions that will reasonably assure a defendant's appearance or the safety of the community in certain circumstances. *See* 18 U.S.C. § 3142(e)(2)–(3). The presumption puts the burden of production on the defendant, but the government continues to bear the burden of persuasion. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

In the present case, however, the circumstances giving rise to the rebuttable presumption are not present and thus the rebuttable presumption does not apply.

Here, the Court finds that the Government has met its burden and has sufficiently demonstrated that Defendant should be detained. Having fully considered the relevant factors, the Court concludes that no condition or combination of conditions would reasonably assure Defendant's appearance as required or the safety of the community.

The nature and circumstances of the offenses charged against Defendant weigh heavily in favor of denying release because, if convicted, Defendant faces potentially lengthy sentences which may incentivize him to flee. Defendant is charged with three counts, each of which relate to his attempt to engage in sexual acts with an individual who he believed was a 13-year-old girl: (i) attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b), which carries a minimum sentence of 10 years and a maximum sentence of life; (ii) travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) and (f), which carries a maximum sentence of 30 years; and (iii) attempted transfer of obscene material to a minor in violation of 18 U.S.C. § 1470, which carries a maximum sentence of 10 years. (Doc. 12). The significant sentences facing Defendant create a strong incentive to flee, increasing the flight risk that Defendant poses. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (finding district court's consideration of the penalties facing the defendants—specifically, lengthy sentences—was reasonable in concluding that the defendants were flight risks).

Moreover, the nature and circumstances of the offenses charged against Defendant, as well as the weight of the evidence against him, underscore the seriousness of his alleged conduct and thereby demonstrate the danger his release may present to the community. For approximately two months, Defendant engaged in sexually explicit conversations with an individual who he believed was a 13-year-old girl, but who was actually an FBI Online Cover Employee ("OCE"). During those conversations, Defendant sent sexually explicit images and videos, discussed sexually explicit topics, told the OCE what sexual acts he wished to perform on her, asked the OCE for pictures of her body, and generally pursued a relationship with the OCE. The OCE told Defendant on multiple occasions that she was a 13-year-old girl and Defendant's communications indicated that he was aware of her age.

For example, he told the OCE that they could meet up "when you get 18" and that she could tell her friends about him "[o]ne day . . . bout 4.5 years from now." Defendant's messages also indicate that he was aware of the illegal nature of his conduct, as he told the OCE to "[m]ake sure you keep our chats deleted please" and "don't msg me around your mom." Defendant even told the OCE that she should confirm with her mother whether she had the Gardasil vaccine, in apparent reference to him having HPV. Defendant sent nude photos and videos of himself, pictures showing sex toys, and adult pornography to the OCE. The conversations culminated in Defendant booking a flight— for the first time in his life—to Arizona from his home state of Arkansas to meet the OCE, who had told him that she lived in Phoenix. He also rented a car and booked a hotel reservation. On December 8, 2022, Defendant was arrested when his plane landed in Phoenix. That morning he had missed his originally scheduled flight but immediately booked another flight set to leave just a few hours later. Upon his arrest, FBI agents found multiple sex toys, lubrication, condoms, and the Plan B pill in his luggage. The lock screen on his phone was set as a photograph of the OCE. In sum, these alleged facts—which go not only to the weight of the evidence against Defendant but also to the nature and circumstances of the offenses charged against him—*strongly* demonstrate Defendant's intent to engage in sexual conduct with a minor and the level of determination with which he pursued that interest. Although it is true that there was not a victim in this case, his conversations with and conduct related to the OCE illustrate the seriousness of Defendant's actions and the danger that he potentially presents to other minors in the community if he is released.

As to the history and characteristics of Defendant, the Court first recognizes that his criminal history includes only a single misdemeanor conviction in 2016. He states that he has never been sexually active with a minor. Further, Defendant contends that he does not use illegal drugs and that he has no admitted or documented history of substance abuse. Moreover, Defendant is employed as a truck driver and has worked for the same company for eight years. He is a member of a "large, closely-knit family." (Doc. 21 at 1). He has strong ties to his community, as he has spent nearly his entire life near the small town of

Cove, Arkansas, where he currently "lives by himself, in a small home, on 40 acres of land." (*Id.*). These facts generally weigh in favor of release. However, it is also true that Defendant has twice been arrested for driving while intoxicated and that he tested positive for alcoholic intoxication when he got off the plane and was arrested in Phoenix. This undermines Defendant's assertion that he does not have any substance abuse issue. Moreover, the "large, closely-knit family" to which he is a member of *includes* his underage nieces and nephews; Defendant made comments related to—and shared pictures of—these nieces and nephews in his conversations with the OCE. Further, while he apparently does not live near a school or any other place where children congregate—and while he asserts that he has never been sexually active with a minor—there is evidence to suggest that his conversations with OCE were not the first time Defendant engaged in conversation with minors on the internet. For example, Defendant told the OCE that he had been speaking "for months" with two other girls, "[o]ne 15 and one 13," even implying that his conversation with the "15 year old" involved sexual topics such as her "first time." In sum, the history and characteristics of Defendant weigh in favor of denying release because the remote, secluded nature of his home, his apparent history of using the internet to engage in conversations with minors, and his use of alcohol raise concerns not only that Defendant would pose a danger to the community but also that it would be difficult to supervise Defendant to ensure that he refrains from contacting minors or that he does not abscond entirely.

Finally, the Court finds that no condition or combination of conditions would reasonably assure Defendant's appearance as required or the safety of the community. Defendant suggests numerous conditions to which he would consent. For example, Defendant states that his family is "willing to serve as third-party custodians" and that he is "willing to post his land as collateral for an appearance bond." (Doc. 21 at 2). He also states that he is amenable to electronic use and location monitoring, home confinement, giving up his firearms, prohibitions on his use of social media and the Internet, prohibitions on contact with minors, and "any other conditions the Court thought necessary." (*Id.* at 7).

However, required contact with pretrial services, travel restrictions, prohibited possession of firearms, prohibited Internet use, prohibited contact with minors, and prohibited use of alcohol and controlled substances are all conditions that are effective only insofar as Defendant complies in good faith with them. *See United States v. Hir*, 517 F.3d 1081, 1092–93 (9th Cir. 2008). For the reasons discussed above—namely, Defendant's alleged *and demonstrated* history of contacting or attempting to contact minors on the Internet and the significant sentences he potentially faces—the Court concludes that the risk Defendant would not comply is unacceptably high. *See id.* at 1093. Given the flight risk Defendant presents, the Court concludes that no set of conditions could reasonably deter him from absconding and assure his appearance for future proceedings. Perhaps more importantly, given the gravely serious nature of the charges against him, the conditions would do little to assuage the danger that Defendant poses to the community. The Court concludes that no set of conditions could reasonably mitigate the significant risks presented and that the proposed conditions would be ineffective.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Review of Detention Order (Doc. 21) is **denied**.

Dated this 18th day of January, 2023.

_____
Honorable Steven P. Logan
United States District Judge
